## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY GALLIS and WILLIAM BOTT, | : | No. 3:05cv551 |
| **Plaintiffs** | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| BOROUGH OF DICKSON CITY, WILLIAM STADNITSKI, in his individual capacity; and THOMAS LOGAN, in his individual capacity, | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition is the motion for summary judgment filed by the defendants, Borough of Dickson City, William Stadnitski, the Dickson City Police Chief and Thomas Logan, a Dickson City Patrolman. The complaint raises allegations that Stadnitski and Logan used their law enforcement authority to punish and intimidate political enemies. The matter has been fully briefed and is ripe for disposition.

## Background[1]

A political faction of Dickson City Borough Council members comprised of Barbara Mecca, Paul Kwiec and Reginald Wrobel (hereinafter "MKW Faction") controlled the Dickson City Borough Council until January 2004. (Doc. 10, Plaintiffs' Amended Complaint (hereinafter "Compl.") ¶ 14). In January 2004, due to the 2003 municipal elections, control of the Borough Council shifted to the Plaintiffs, Anthony Gallis and William Bott, and their political allies, Robert Wiltshire and Peter Novajosky (hereinafter "GB Faction"). (Compl. ¶ 13).

Patrolman Logan and his family as well as Police Chief Stadnitski are longtime political supporters of the MKW Faction, and longtime political

_____

[1]This short background section is based merely upon the allegations of the complaint, and we make no determination as to the veracity of these allegations.

adversaries of the GB Faction.  (Comp. ¶ 15).

A highly publicized dispute regarding the development of a public golf course in Dickson City Borough (hereinafter "Borough") rendered the 2003 campaign extremely acrimonious.  (Compl. ¶ 17).   The MKW Faction supported a plan to empower the Borough's Golf Authority to collect and spend over seven million dollars in public funds on the golf course financing and development projects.  (Compl. ¶ 18).  The MKW Faction appointed Logan's father and Stadnitski to the Golf Authority.  (Compl. ¶¶ 19- 20).  The GB Faction openly opposed the MKW Faction's golf course plan and campaigned against providing the Golf Authority unbridled authority to spend millions of taxpayers' dollars. (Compl. ¶ 21).  During the campaign, Stadnitski, Logan and/or their family members worked to ensure that the GB Faction would not gain a majority of the Borough Council.  (Compl. ¶ 22).

In November 2003, Defendant Logan filed criminal charges against Plaintiff Gallis asserting that he harassed and assaulted a Borough employee.  (Compl. ¶ 23).  Plaintiffs assert that these criminal charges were bogus and advanced to retaliate against Gallis for his speech/conduct as an elected official.  (Compl. 24).  Plaintiffs further allege that Stadnitski issued a series of bogus citations against well-known political supporters of the GB Faction.  All the citations were dismissed or withdrawn for lack of merit.  (Compl. ¶ 33).

During the November 10, 2004 Borough Council meeting, Bott voted in support of a Police Chief contract that Stadnitski asserted resulted in a pay cut. (Compl. ¶ 34).  The next day, Stadnitski pulled over Bott's automobile and issued him $290.00 worth of traffic citations for failing to use a turn signal and failing to wear a seat belt.  (Compl. ¶ 35).  The traffic citations were eventually withdrawn. (Compl. ¶ 38).   Plaintiffs assert that Stadnitski issued the citations in retaliation

for Bott's speech/conduct, including his support of the Police Chief contract. (Compl. ¶ 36).

Based upon the above allegations, the plaintiffs filed the instant sixteen-count complaint that asserts both federal and state causes of actions. The federal causes of action that are alleged include[2]:   Count IV, Gallis v. Stadnitski and Logan for violation of Gallis's First Amendment Speech and Political Association rights under 42 U.S.C. §1983; Count VIII, Gallis v. Borough of Dickson City for violating federal law under 42 U.S.C. §1983; Count IX, BOTT v. Stadnitski for false arrest under 42 U.S.C. § 1983; Count XII, Bott v. Stadnitski for violation of Bott's First Amendment rights of speech and association; Count XVI, Bott v. Borough of Dickson City for violating federal law under 42 U.S.C. § 1983.   The state law causes of action include: Count X, false arrest with regard to Plaintiff Bott; and Counts III and Count XI alleging malicious prosecution with regard to Gallis and Bott respectively.  The defendants have moved for summary judgment on plaintiffs' complaint bringing the case to its present posture.

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knave v. Bourn, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

---

[2]After the filing of the motion for summary judgment, the parties entered into a Stipulation of Dismissal of Certain Claim (Doc. 36).  Our listing of the claims includes only those that are have not been withdrawn.

judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. <u>International Raw Materials, Ltd. v. Stauffer Chemical Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. <u>Id.</u> Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. <u>Id.</u> at 324.

**Discussion**

**A. Plaintiff Bott's federal and state law false arrest claims**

Defendants first attack the Plaintiff Bott's cause of action for false arrest under federal law, Count IX of the Complaint. As set forth above, Defendant Stadnitski pulled over Bott's automobile and issued him $290.00 worth of traffic citations for failing to use a turn signal and failing to wear a seat belt. (Compl. ¶ 35). The traffic citations were eventually withdrawn. (Compl. ¶ 38). Based upon these allegations, Plaintiff Bott alleges that he suffered a false arrest under

4

federal law.

Bott proceeds under 42 U.S.C. § 1983.  In order to establish a section 1983 claim, plaintiff must demonstrate that a person acting under color of state law deprived him of a federal right.  42 U.S.C. §1983.  In the instant case, there is no dispute that the defendants are state actors.  The sole question then is whether Bott can establish the deprivation of a federal right.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures.  A plaintiff may establish a Fourth Amendment violation for false arrest where: 1) if he is seized for Fourth Amendment purposes; and 2) if that seizure was unreasonable, i.e., made without probable cause.  Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000).  Defendants claim that Bott cannot establish that probable cause existed for Defendant Stadnitski to stop his vehicle and issue him traffic citations.  After a careful review, we find that the issue of probable cause in this instance is a jury question.

Defendant Stadnitski claims that he possessed probable cause to stop Botts' vehicle because Bott failed to use his turn signals when turning.  A failure to use turn signals is a violation of the Pennsylvania Motor Vehicle Code (hereinafter "MVC").  75 PA. CONS. STAT. ANN. § 3334(a).  A police officer observing a violation of the MVC gives rise to probable cause to make a traffic stop.  Commonwealth v. Spieler, 887 A.2d 1271, 1276 (Pa. Super. Ct. 2005).

The question of probable cause in this instance, however, is a question of fact for the jury.  Generally, "[t]he question of probable cause in a section 1983 damage suit is one for the jury."  Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998).  The jury may well believe that Stadnitski did observe Bott fail to use his turn signal when turning.  On the other hand, the jury could decide not to

5

credit Stadnitski's testimony as to whether he had probable cause for the stop based upon the antagonistic history between the two men.  Accordingly, summary judgment will be denied with respect to Count IX of the Complaint.

Count X of the complaint asserts a state law false arrest claim. Defendants again assert that in order to prevail on a false arrest claim, Bott must establish that the traffic citations were issued without probable cause. Defendants argue that because probable cause existed for the issuance of the citations, then the state false arrest claims must be dismissed.   We disagree. As discussed above, probable cause is a jury question with regard to the traffic citations.  Therefore, defendants' motion for summary judgment on Bott's state false arrest claims, Count X, will be denied.

### B.  Plaintiffs' First Amendment Retaliation Claims

Next, the defendants seek judgment on the plaintiffs' First Amendment Retaliation claims, Counts IV and XII of the complaint.   Plaintiff Gallis asserts that the decisions made by Stadnitski and Logan to charge him criminally on November 1, 2003, as well as their decision to speak to the news media regarding the case, were motivated by their desire to retaliate against him due to his First Amendment protected political associations, speech and activities, and in an attempt to "chill" further such association, speech and activities. ( Compl. ¶ ¶ 65-66).  Bott alleges the same with regard to the traffic citations he received and for accusations in February 2005 of criminal wrongdoing.  (Compl. ¶  106).

With respect to claims that the government has taken action in retaliation of one's exercise of his constitutional rights, the law provides that "government actions, which standing alone do not violate the constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."  Rauser v. Horn, 241 F.3d 330,

6

333 (3d Cir. 2001) (citations omitted).

The elements a plaintiff must establish in order to prevail on a First Amendment retaliation claim are:

(1) that he engaged in constitutionally-protected activity;

(2) that the government responded with retaliation; and

(3) that the protected activity caused the retaliation.

Eichenlaub v. Township of Indiana, 385 F.3d 274, 282 (3d Cir. 2004).

Plaintiffs' First Amendment retaliation claims can be broken down into retaliation by filing criminal citations, and retaliation by speaking to the media. We will discuss these subjects separately.

## 1. Criminal Citations

Defendants contends that retaliation cases involving arrests or issuance of a citation should be dismissed if probable cause supports the arrest or citation. Defendants contend that probable cause exists for all the citations/arrests at issue in the instant case; therefore, plaintiff's retaliation claims based upon the arrests/citations should be dismissed. Plaintiff claims that the existence of probable cause does not prohibit a First Amendment retaliation claim. A review of the case law supports the defendants' position that the existence of probable cause prohibits a plaintiff from prosecuting a First Amendment retaliation claim. See, e.g., Dahl v. Holley, 312 F.3d 1228, 1236 (11th Cir. 2002); Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). Although, the Third Circuit Court of Appeals has yet to address the issue, it has addressed a similar issue. It has ruled that in a malicious prosecution action under section 1983, a plaintiff must plead an absence of probable cause for the initiation of proceedings against him. Montgomery v. De Simone,159 F.3d 120, 124 (3d Cir. 1998). Based upon this persuasive authority, we find that a plaintiff must in fact

7

establish a lack of probable cause to pursue a First Amendment retaliation action.

This does not end our inquiry into plaintiffs' First Amendment retaliation claims.  Defendants proceed to argue that because probable cause supported all the citations/arrests at issue, then judgment should be granted in their favor.  On the other hand, the plaintiffs argue that probable cause is not established in this case as a matter of law and is instead a jury question.  As stated in the last section, a question of fact exists as to whether the traffic citations issued to Plaintiff Bott were actually supported by probable cause.  Therefore, motion for summary judgment with regard to Bott's First Amendment retaliation claim based upon the traffic citations will be denied.

Gallis has advanced a First Amendment retaliation claim based upon his arrest in November 2003.  We must examine the record to determine if probable cause existed for his arrest.

In November 2003, Logan filed criminal charges against Gallis that asserted he harassed and assaulted a Borough employee.  Logan charged him with harassment and disorderly conduct.

Defendants contend that as a matter of law, probable cause existed for these charges.  A showing of probable cause requires "proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense." Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir.1993).  We note again that "[g]enerally, the question of probable cause in a section 1983 damage suit is one for the jury." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000)(internal quotation marks and citations omitted).   Nonetheless, summary judgment may be the appropriate stage to render a probable cause determination where there are no

genuine issues of material fact and no credibility issues.  <u>Deary v. Three</u>
<u>Un-Named Police Officers</u>, 746 F.2d 185, 192 (3d Cir.1984).  As with Bott,
credibility issues and genuine issues of material fact preclude us from granting
summary judgment on Gallis's claims.

　　In the instant case, Logan charged Gallis with harassment and disorderly
conduct. Under the Pennsylvania Crimes Code a person commits disorderly
conduct when "with the intent to cause public inconvenience, annoyance or
alarm, or recklessly creating a risk thereof he engages in fighting or threatening,
or in violent or tumultuous behavior." 18 PENN. CONS. STAT. ANN. § 5504(a)(1).
A person commits harassment where "with intent to harass, annoy or alarm
another, [a] person strikes, shoves, kicks or otherwise subjects the other person
to physical contact, or attempts or threatens to do the same."  18 PENN. CONS.
STAT. ANN. § 2709(a)(1).

　　Defendants assert that the record reveals that the facts and evidence
allowed Logan to form a reasonable, good faith belief that a crime had been
committed.  According to the defendants, Kimberly Yencho, a borough
employee, provided a statement to Officer Logan indicating that Gallis had
shoved and physically contacted her.  Plaintiff Gallis asserts that the
circumstances surrounding the arrest make probable cause a jury question.
After a careful review, we agree with Plaintiff Gallis.

　　The parties agree that in October 2003, the Dickson City Civic Center
sponsored a "haunted house" in a borough owned building.  The Civic Center's
director, Kimberly Yencho, was in charge of the haunted house operations.

　　Gallis was informed that damage may have been done to the building, and
he went to investigate with Robert Wiltshire.  When they arrived, Plaintiff Gallis
and Yencho got into some kind of disagreement regarding entering the premises

and turning on a light switch in one of the rooms. Yencho was attempting to turn
it off, and Gallis was trying to turn it on. It was this struggle over the light switch
that involved the actions that led to the charges.

At the criminal hearing Yencho testified as follows:

> [T]hey walked into a room which the light was already off.
> The light was off, and that's where I felt, you know, I had
> the light off, it was my haunted house so it should stay
> off. So Mr. Gallis went over and put the light on and then
> that's when I had walked over and I said, No, I said this is
> my haunted house. I said, you could come back on
> Monday if you want to take any pictures. And he said,
> No, and put the light back on.
> So I stood there and I put the light back off, and
> that's when Mr. Gallis grabbed my hand and he did push
> me back.

(Pl. Ex. 26 at 27). At her deposition, Yencho testified that the next day when
she talked to Defendant Logan she told him what occurred at the "haunted
house" and that Gallis had pushed her. (Id. at 100). She also testified, however,
that "I don't think he [Gallis] was realizing what he was doing at that time. . .."
(Id. at 71). Moreover, she did not believe that Gallis was trying to hurt her. (Id.
at 77).

Defendants contend that Logan filed the charges based upon Yencho's
version of events. The written statement provided by Yencho evidently does not
exist any more. (Pl. Ex. 7, Logan Dep. at 99). The only written record of what
Yencho told Logan is found in the summary provided in Logan's "Special Report"
regarding the incident. The facts in the report do not completely agree with the
version of events provided by Yencho at her deposition. For example, the report
states that Gallis pushed Yencho up against the wall several times. (Pl. Ex. 2 7).
As set forth above, however, Yencho testified that Gallis pushed her once.
Moreover, defendants assert that Logan received approval to file the charges
from Lackawanna County Assistant District Attorney Paul Peterson. (Pl. Ex. 28-
29, 30). Peterson, however, has stated that he did not approve the charges as it

10

is the District Attoney's Office's policy not to approve such charges.  The policy is to leave the decision on these types of charges to the discretion of the local police department.  (Pl. Ex. 11 at 13-14).

It is evident, therefore, that questions of fact exist regarding the probable cause to file the instant charges.  It will be the jury's task to sift through the facts and determine if Officer Logan possessed probable cause to bring the charges.  The defendants' motion for summary judgment on this issue will, therefore, be denied.

### 2.  Speaking to the news media

The second part of plaintiffs' retaliation claim is that the defendants spoke out to the media with regard to the criminal charges discussed above, in further retaliation of their exercise of their First Amendment rights.  The defendants argue that the defendants themselves possessed a First Amendment right and a statutory duty under Pennsylvania law to provide truthful and accurate information to the media about public officials such as the plaintiffs.  Therefore, they cannot be held liable for speaking to the media.

Plaintiffs argue that the defendants' publication of criminal allegations to the news media can trigger First Amendment protection where the publication is sufficient to deter a person of ordinary firmness from exercising his or her First Amendment rights.

After a careful review, we are in agreement with the defendants.  While there are no Third Circuit cases on point, it appears that we must balance the interests of the public in receiving information from public officials such as the police, versus the rights of the plaintiffs to be free from embarrassing publicity. In making our decision we bear in mind that information contained in the police incident reports and judicial documents are in fact public records. See, e.g.,

11

Scheetz v. Morning Call, Inc., 946 F.2d 202, 207 (3d Cir. 1991).

While the publication of the charges may have been very humiliating to the plaintiffs and their families, their remedy lies with the First Amendment retaliation claim related to filing of bogus charges, not with allegations that the defendants retaliated by speaking to the media. Accordingly, judgment will be granted to the defendants with respect to these claims.[3]

## C. Qualified Immunity

Defendants next argue that if the section 1983 claims are not dismissed due to their legal insufficiency, the defendants are nonetheless entitled to qualified immunity.

At times, police officers are entitled to qualified immunity in the section 1983 context. The Third Circuit Court of Appeals has explained as follows:

> The primary purpose of affording public officials the privilege of qualified immunity, thus insulating them from suit, is to protect them "from undue interference with their duties and from potentially disabling threats of liability." Elder v. Holloway, 510 U.S. 510, 514, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The privilege of qualified immunity, however, can be overcome when state officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818, 102 S.Ct. 2727.

Wright v. City of Philadelphia, 409 F.3d 595, 599-600 (3d Cir. 2005).

---

[3]In support of their position, the plaintiffs cite two case from the Sixth Circuit Court of Appeals, Bloch v. Ribar, 156 F.3d 673 (3d Cir. 1998) and Barrett v. Harrington, 130 F.3d 246 (3d Cir. 1997). We find that these cases are not analogous to the instant situation. In Bloch, a crime victim sued a sheriff for First Amendment retaliation after the sheriff revealed confidential and highly personal details of her rape by an unknown assailant. 156 F.3d at 676. The Barrett case dealt with allegations that a judge falsely accused the plaintiff of stalking her in retaliation for revealing the judge's allegedly illegal conduct as an elected official. Barrett, 130 F.3d 246.

A two-pronged test is used to determine the applicability of qualified immunity.  First, we must determine whether under the facts alleged by plaintiff, a constitutional right may have been violated and second, whether that right is clearly established.  Saucier v. Katz, 533 US 194, 201 (2001).

As set forth above, plaintiffs have alleged facts that could establish a constitutional violation.  We must determine therefore if the rights were clearly established.  It is beyond question that the right to be free from unreasonable seizures/false arrests under the Fourth Amendment is clearly established.  Moreover, it would be improper to rule that it is not clearly established that a police officer cannot retaliate against someone for exercise of their political/speech rights by filing false charges against them.  Therefore, defendants' qualified immunity claim will be denied. [4]

### D. Monell liability

In addition to the claims against the individual defendants, the plaintiffs have also asserted claims against the Borough of Dickson City, Counts VIII and XVI of the complaint.   A municipality cannot be held liable for a section 1983 action based upon respondeat superior.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  A municipality can be held liable, however,  when it unconstitutionally implements or enforces "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by" the officers of that municipality. Id. at 690.  This rule"was intended to distinguish acts of thes municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually

---

[4]Qualified immunity would apply if we had not already decided to grant summary judgment with respect to the police speaking to the media.  The dearth of case law on this issue indicates that any rights plaintiffs may have in that area are not clearly established.

responsible." <u>Pembaur v. City of Cincinatti</u>, 475 U.S. 469, 479 (1986).

Defendants assert that plaintiffs have provided no evidence to support a claim that Dickson City adopted a policy or custom of inadequately training, supervising, or disciplining its officers, of permitting or encouraging its officers to violate citizens' constitutional right or of condoning civil rights violations, therefore, the borough cannot be held liable. After a careful review, we disagree.

A plaintiff can demonstrate that a municipality's course of conduct amounts to government policy when "a decisionmaker possessing final authority to establish municipal policy with respect to the action 'issues an official proclamation, policy, or edict.'" <u>Andrews</u>, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481 (1986)). Plaintiffs have presented evidence that Defendant Stadnitski, as police chief serves as the Dickson City Police Department's "chief executive officer." (Pl. Ex. 13, Stadnitski Dep. at 9). He has "final decision-making authority" with respect to all Police Department operations. (<u>Id.</u> at 11, 12, 15, 16). Plaintiffs assert that the Chief of Police was directly involved in the alleged constitutional violations. Accordingly, <u>Monell</u> liability can be established and the Borough of Dickson City will not be dismissed from this case.

### E. Plaintiff Gallis's state law malicious prosecution claim

Defendant seek summary judgment on Count III of the complaint, Plaintiff Gallis's cause of action against Stadnitski and Logan for malicious prosecution under Pennsylvania state law.

In order to establish a malicious prosecution claim, under state law, Plaintiff Gallis must establish: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for

14

a purpose other than bringing the plaintiff to justice. <u>Hilfirty v. Shipman</u>, 91 F.3d 573, 579 (3d Cir.1996).

Defendants argue that judgment in their favor should be entered because the proceedings were initiated with probable cause. As set forth, above, , we have determined that probable cause is a question for the jury to determine. Therefore, judgment on the state law malicious prosecution claim with regard to Plaintiff Gallis will be denied.

**Conclusion**

For the forgoing, reasons, the defendants' motion for summary judgment will be granted in part and denied in part. It will be granted with respect to plaintiff's First Amendment retaliation claims based upon defendants' contact with the media and with respect to Plaintiff Bott's malicous prosecution claim.[5] It will be denied in all other respects. Remaining in the case therefore are the following causes of action:

Count III, Plaintiff Gallis's malicious prosecution claim;

Count IV, Plaintiff Gallis's claim for violation of his First Amendment Speech and Political Association rights under 42 U.S.C. § 1983;

Count VIII, Plaintiff Gallis's claim against the Borough of Dickson City;

Count IX, Plaintiff Bottss claim for false arrest under 42 U.S.C. § 1983;

Count XII, Plaintiff Bott's claim for violation of his First Amendment Speech and Political Association rights under 42 U.S.C. § 1983[6]; and

---

[5]The plaintiffs do not oppose the dismissal of Bott's malicious prosecution claim. (Pl. Br. at 22). Therefore, judgment will be granted to the defendants on Count XI of the complaint, malicious prosecution.

[6]Counts IV and XII remain only with respect to filing the charges and not with respect to the defendants speaking to the media.

Count XVI, Plaintiff Bott's cause of action against the Borough of Dickson City.   An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTHONY GALLIS and**<br>**WILLIAM BOTT,** | : | **No. 3:05cv551** |
| **Plaintiffs** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **BOROUGH OF DICKSON**<br>**CITY, WILLIAM STADNITSKI,**<br>**in his individual capacity; and**<br>**THOMAS LOGAN, in his**<br>**individual capacity,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 3rd day of October 2006, the defendants' motion for summary judgment (Doc. 21) is hereby **GRANTED** with respect to the plaintiffs' claims that the defendants retaliated against them by speaking to the media and with respect to Plaintiff Bott's malicious prosecution claim.  It is **DENIED** in all other respects.

BY THE COURT:


s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court

17